UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES LEE QUISENBERRY, JR.                                                          PETITIONER

v.                                                         Civil Action No. 3:15CV-00789-RGJ-RSE

SCOTT JORDAN                                                                        RESPONDENT

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner James Lee Quisenberry, Jr.'s ("Quisenberry's") Petition for Writ of Habeas Corpus ("Petition"). [DE 1]. Respondent Warden Scott Jordan ("Jordan") responded [DE 10] and Quisenberry replied [DE 11]. The Magistrate Judge filed Findings of Fact and Conclusions of Law and Recommendation ("R&R"). [DE 18]. Quisenberry timely objected. [DE 23]. The matter is ripe. Having reviewed de novo the portions of the R&R to which Quisenberry objected, the Court **ADOPTS** the Magistrate Judge's Findings of Fact and Conclusions of Law and **OVERRULES** Quisenberry's objections.

**I.     BACKGROUND**

In March 2011, the Kentucky Supreme Court affirmed Quisenberry's convictions for first-degree robbery, second-degree manslaughter, facilitation of attempted murder, facilitation of first-degree assault, and tampering with physical evidence. *Quisenberry v. Com.*, 336 S.W.3d 19, 42 (Ky. 2011).

In March 2012, Quisenberry filed a motion, under Kentucky Rule of Criminal Procedure 11.42, in Jefferson County Circuit Court ("state trial court") to vacate the judgment due to ineffective assistance of counsel. [DE 10-3 at 71]. Finding that the record was adequately developed to address Quisenberry's claims, the state trial court did not conduct an evidentiary

1

hearing and denied his motion. *Id.* at 91-92. The Kentucky Court of Appeals denied his appeal. *Id.* at 219.

In October 2015, Quisenberry filed this *pro se* Petition [DE 1] asserting eight grounds for relief:

> <u>Ground One</u>: The Petitioner recived [sic] ineffective assistance of counsel arising from counsel [sic] failure to personally interview two witnesses, failure to develope [sic] a defense and counsels [sic] failure to consult with petitioner.
>
> <u>Ground Two</u>: Petitioner received ineffective assistance of counsel arising from the trial courts [sic] failure to order seperate [sic] trials for himself and his co-defendant.
>
> <u>Ground Three</u>: Petitioner recived [sic] ineffective assistance resulting from counsels [sic] failure to retain and utilize a mitigation specailist [sic].
>
> <u>Ground Four</u>: It was denied of due process for the state court to deny petitioner's motion for a directed verdict as there was insufficient evidence to prove every element of first degree robbery.
>
> <u>Ground Five</u>: The petitioner was denied due process as a result of the trialcourt's [sic] giving instructions for Manslaughter second degree and Reckless Homicide.
>
> <u>Ground Six</u>: [T]he petitioner was denied due process as a result of the trial court's denied [sic] of petitioner's directed verdict motion as there was insufficient evidence to prove the charge of tampering with physical evidence.
>
> <u>Ground Seven</u>: A double jeopardy violation arose from petitioner being charge [sic] with assault and attempted murder of one violation and then being convicted of facilitation for each charge that arose from a single act.
>
> <u>Ground Eight</u>: The petitioner received ineffective assistance of counsel resulting from his attorney's failure to make appropriate motions after a juror's bias was revealed.

[DE 1 at 7-16].

Under 28 U.S.C. §§ 636(b)(1)(A) & (B), the Court referred this matter to Magistrate Judge Regina Edwards. [DE 17]. After considering Jordan's response, Quisenberry's reply, and

2

the record, the Magistrate Judge denied the Petition and declined to issue a certificate of appealability. [DE 18].

## II. STANDARD

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). 28 U.S.C. § 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This is a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted). For a state court's application of law to be "unreasonable," it must be more than just "erroneous" or "incorrect"; it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotation marks and citations omitted). "The threshold for 'unreasonableness' is 'substantially higher' than it is for incorrectness . . . satisfied only when a state-court decision 'was so lacking in justification that there was an error well understood and comprehended in

3

existing law beyond any possibility for fairminded disagreement.'" *Thurmond v. Carlton,* 489 Fed. App'x 834, 836–37 (6th Cir.2012) (internal citations omitted).

### III. DISCUSSION

Quisenberry timely objected to the Magistrate Judge's R&R. [DE 23]. The Court will "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After such review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Most of Quisenberry's objections are presented as a conclusory statement—such as "[t]he magistrate's recommendation and order made an unreasonable determination of fact despite the record before it, and rendered a decision that is contrary to clearly established law take the following form"—or an extended argument on the merits of the claim. [*See, e.g.*, DE 23 at 292]. In his objections, Quisenberry appears to argue that the Magistrate Judge's findings violate 28 U.S.C. § 2254(d). But, 28 U.S.C. § 2254(d) applies to a state court's decisions, not the Magistrate Judge's. Quisenberry likely intended to argue that the Magistrate Judge erred in finding that the state courts did not violate 28 U.S.C. § 2254(d). Even under this forgiving interpretation of Quisenberry's objections, many of his objections are not entitled to de novo review because they are "conclusive" and "general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide *de novo* review where the objections are . . . conclusive or general. . . . The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider") (internal quotation marks, citation, and formatting omitted); *See Woolbright v. Crews*, No. 1:12-CV-00080-GNS, 2018 WL 357908, at *3 (W.D. Ky. Jan. 10, 2018) ("General objections have the same effect as would a failure to

4

object—i.e., the Court may forego review of [them]); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious").

The Court will therefore only consider Quisenberry's objections to specific portions of the R&R or the Magistrate Judge's reasoning. That said, the Court acknowledges Quisenberry's *pro se* status and will give him the "benefit of the doubt" and "liberally" construe his objections. *See Garrett v. Warden, Toledo Corr. Inst.*, No. 3:19-CV-191, 2020 WL 519819, at *1 (S.D. Ohio Jan. 3, 2020) ("The federal courts will liberally construe the pleadings of *pro se* litigants, trying to give them the benefit of the doubt about the meaning of what they file"); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("*Pro se* habeas petitioners are to be afforded the benefit of any doubt") (internal quotation marks and citation omitted); *Price v. Johnston*, 334 U.S. 266, 292 (1948) ("Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession").

**A.      Objection: Insufficient Evidence to Support Convictions**

*i. Robbery Conviction*

Quisenberry argues that he was "convicted of complicty [sic] to commit first degree robbery. The only evidence at trial was that petitioner was present at the scene of the crime when Kenneth Williams commiitted [sic] a robbery. Presence at a scene is not sufficient to prove guilt." [DE 1 at 12].

5

The Magistrate Judge rejected this argument and found that:

> Quisenberry's initial contact with Harper by phone, presence at the crime scene, acquiescence in taking Williams to his mother's house following the crime, and the established physical injuries to Harper plainly support his first-degree robbery conviction. A rational trier of fact could have concluded from this evidence, taken in a light most favorable to the prosecution, that Quisenberry committed robbery under Kentucky law. Therefore, sufficient evidence exists to support the jury's guilty verdict on this charge.

[DE 18 at 254].

Quisenberry objects:

> The Magistrate has made an unreasonable determination of facts despite the evidence before the Court regarding the Petitioner's ***Jackson v. Virginia*, 99 S.Ct. 2781** claim, and further unreasonably applied clearly established federal law in his recommendation. The Petitioner requests this Court make a *de novo* review of whether in light of exculpating evidence, was the evidence sufficient under ***Jackson and In re Winship***.
>
> . . .
>
> Mr. Quisenberry did not intend, lend aid, or approve of the offense committed by the principal actor (Williams). See ***Rogers v. Com.*, 315 S. W.3d@ 312**. Quisenberry never possessed a gun or took part in aiding of any of Williams' acts. There existed no prior motive or other evidence that corroborated the *mens rea* required of intent to commit a theft which is the underpinning element to all of the charges deeming the Petitioner is not the principal. Williams did not implicate Mr. Quisenberry, or testify at trial.
>
> Furthermore, physical DNA evidence places Quisenberry in another room while the murder of Ms. Harper took place. It was Williams who grabbed the purse first, then shot Harper as she resisted. As soon as the shooting took place, the Petitioner left the house.

[DE 23 at 285-287] (emphasis in original).

Because Quisenberry did "not challenge the factual findings from his direct appeal," the Magistrate Judge adopted them. [DE 18 at 247]. This was not an "unreasonable determination of facts." *See Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1),

6

and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)").

Quisenberry challenges the Magistrate Judge's application of *Jackson v. Virginia*, 443 U.S. 307 (1979). Although the Commonwealth's case was largely circumstantial, "circumstantial evidence standing alone if competent, may support a guilty verdict and is not required to eliminate any reasonable hypothesis except that of the defendant's guilt." *Bowen v. Haney*, 622 F. Supp. 2d 516, 546 (W.D. Ky. 2008). Thus, even though the evidence was circumstantial, the Magistrate Judge properly determined that there was sufficient evidence for a "rational trier of fact" to find Quisenberry guilty of first-degree robbery. Quisenberry's initial contact with Harper by phone, his presence at the crime scene, acquiescence in taking Williams to his mother's house following the crime, and the established physical injuries to Harper were enough to support his first-degree robbery conviction. [DE 18 at 254]. The Court, therefore, further agrees with the Magistrate Judge that the Kentucky Supreme Court did not "unreasonably" apply *Jackson*. *Jackson*, 443 U.S. at 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt) (emphasis in original); *See Gipson v. Sheldon,* 659 F. App'x 871, 879 (6th Cir. 2016) (upholding conviction of robbery where defendant did not actively participate in robbery and there was only circumstantial evidence connecting him to robbery where "specific intent to kill and rob Harper can be reasonably inferred from Gipson's presence at the crime scene, his companionship with Ricks, and his conduct after Harper had been killed").

Quisenberry next objects that "[t]he magistrate made a decision clearly contrary to SCOTUS law in ***Hicks* v. *United States*, 150 U.S. 442, 447, 450**." [DE 23 at 287] (emphasis in original). In *Hicks*, the Supreme Court held that there was insufficient evidence to support Hicks' murder conviction:

> The evidence . . . shows no facts from which the jury could have properly found that the rencounter was the result of any previous conspiracy or arrangement. The jury might well, therefore, have thought that they were following the court's instructions in finding the accused guilty because he was present at the time and place of the murder, although he contributed neither by word nor action to the crime, and although there was no substantial evidence of any conspiracy or prior arrangement between him and Rowe.

*Hicks v. United States*, 150 U.S. 442, 450 (1893).

But, *Hicks* is factually distinguishable because, as correctly noted by the Magistrate Judge, there were facts in this case—such as Quisenberry contacting Harper and driving Williams from the scene—"from which the jury could have properly found that" the encounter with Harper "was the result of . . . [a] . . . previous conspiracy or arrangement." *Hicks*, 150 U.S. at 450; [*See* DE 18 at 254].

Quisenberry also objects that "[t]his Court has to look to state law construction to assess this claim, of which the Magistrate failed to do so and apply the law properly to the facts." [DE 23 at 287]. Quisenberry is incorrect. The Magistrate Judge did "look to state law construction to assess this claim." *Id.* The Magistrate Judge considered KRS § 515.020, Kentucky's first-degree robbery statute, and case law interpreting it. [*See* DE 18 at 253]. The Court overrules this objection.

    *ii. Assault and Attempted Murder Conviction*

Quisenberry argues that the Magistrate Judge unreasonably determined the facts of these convictions "despite the evidence presented to this Court and the record before it. ***Jackson v.***

8

*Virginia*, 99 S.Ct. 2781." [DE 23 at 288] (emphasis in original). But Quisenberry did not argue this in his Petition, and thus the Magistrate Judge never considered it. Because the Magistrate Judge did not consider it, the Court cannot consider it either and must overrule it. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[T]he Magistrate Judge Act . . . does not allow parties to raise at the district court stage new arguments . . . that were not presented to the magistrate." (citations omitted); *Woolbright v. Crews*, No. 1:12-CV-00080-GNS, 2018 WL 357908, at *5 (W.D. Ky. Jan. 10, 2018) (finding argument waived and denying it because petitioner raised it for the first time in an objection).

   *iii. Tampering with Physical Evidence Conviction*

  Quisenberry claims that he was "denied due process as the result of the trial court's denied [sic] of petitioner's directed verdict motion as there was insufficient evidence to prove the charge of tampering with physical evidence." [DE 1 at 14].

  The Magistrate Judge disagreed:

> After participating in the robbery and seeing Williams possess a 9 mm handgun, Quisenberry surely knew 'that an official proceeding [would] be instituted[.]' KRS § 524.100. And because Turner testified that Quisenberry drove Williams to his mother's house following the robbery and disposed of certain evidence in South Louisville, a reasonable juror could infer that Quisenberry knew Williams still possessed the handgun and participated in discarding it, along with other evidence. Quisenberry did not attempt to turn the gun over to police, and there is no evidence that he encouraged Williams to do so . . . Additionally, evidence that Quisenberry acted in concert with Williams before, during, and after the robbery, even though it was not clear whether both were principals or which was a principal and which was an abettor, allowed for the combination jury instruction on the tampering with evidence charge . . . The Kentucky Supreme Court's finding that sufficient evidence supported the jury's verdict cannot be considered an unreasonable application of *Jackson* because a rational trier of fact could have agreed with the jury.

[DE 18 at 257-258].

9

Quisenberry objects:

> The magistrate has made an unreasonable determination of fact despite the evidence presented and made a ruling contrary to well established law in ***Jackson*** . . . The Magistrate failed to acknowledge the fact that no evidence was introduced to established [sic] that the petitioner was guilty of tampering with physical evidence . . . There was absolutely no evidence introduced to establish that Petitioner concealed either the gun or any property of Earon Harper. He was not shown to be in possession of either.

[DE 23 at 289].

The Court disagrees. The Magistrate Judge was appropriately deferential to the factual findings of the state court. *See Miller-El*, 537 U.S. at 324. Quisenberry has not established by clear and convincing evidence that the state court's factual findings are incorrect. *Id.*

Moreover, the Magistrate Judge properly applied *Jackson* to this claim. In Kentucky, a person is a guilty of tampering with evidence when, believing that an official proceeding may be instituted, he "[d]estroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with the intent to impair its verity or availability in the official proceeding." KRS § 524.100. At the close of his trial, the state trial court instructed the jury that "that it could find Quisenberry guilty of tampering if 'acting alone or in complicity with Kenneth Williams, [he] concealed or removed firearms or personal property of Earon Harper that he believed were about to be produced or used in a criminal prosecution or official proceeding.'" *Quisenberry*, 336 S.W.3d at 38. The Kentucky Supreme Court found that there was sufficient evidence to support this conviction:

> [T]he evidence that Quisenberry participated in the robbery and that Harper's personal effects and those of the Walgreens pharmacist were found a short time after Harper's murder in a catch basin near her residence permitted a rational juror to conclude either that Quisenberry had aided Williams in disposing of those items or that he had disposed of them (or some of them) himself intending to conceal them and to prevent their use as evidence in the proceeding against him.

*Id.*

Quisenberry argues:

> There is no evidence from any source that Quisenberry had participated directly or indirectly in disposing of the gun or any property of Earon Harper's at any time, concealed or disposed of it. Turner never testified that Williams told him that Quisenberry was with him during this time after the crime to get rid of the items. Again, Turner stated he directly saw the gun and pills still in Turner's possession after the Petitioner dropped Williams off. Petitioner's mere presence is not enough to sustain this challenged offense.

[DE 23 at 289-290].

Based on the evidence discussed by the Kentucky Supreme Court and the Magistrate Judge, a rational trier of fact could have agreed with the jury. *Jackson*, 443 U.S. at 326. ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution"). The Court therefore overrules this objection.

**B.     Objection: Second-Degree Manslaughter Instruction**

Quisenberry claims that he "was denied due process as a result of the trialcourt's [sic] giving instructions for Manslaughter second degree and Reckless Homicide." [DE 1 at 13]. He states that "[a]ll that was proven was that [he] was at the scene of a crime . . . The verdict finding [him] guilty of second degree manslaughter was not supported by the evidence." *Id.*

In the R&R, the Magistrate Judge treated this claim as "one challenging the sufficiency of the evidence of his manslaughter claim" because, "although Quisenberry seems to present this claim as an instructional error," the "facts and law supporting his claim allege that there was insufficient proof to support his manslaughter conviction." [DE 18 at 255].  After reviewing Quisenberry's appellate brief, the Supreme Court of Kentucky's opinion, and his Petition, the Court finds that, in fact, the claim is one of "instructional error." [*See* DE 10-3 at 120]; *See*

*Quisenberry*, 336 S.W.3d at 37.[1] The Court must therefore determine whether the Supreme Court of Kentucky unreasonably applied "clearly established Federal law" in finding that the state trial court did not err in instructing the jury on second-degree manslaughter.

> On direct appeal, the Supreme Court of Kentucky held:
>
> With respect to the charge of second-degree manslaughter, we note that if in the course of a robbery a participant other than the defendant commits an act of killing, the defendant may be judged complicit in the killing to the extent that his participation in the robbery establishes, with respect to the killing, a culpable state of mind, whether intent, aggravated wantonness, wantonness, or recklessness. *Meredith v. Commonwealth*, 164 S.W.3d 500 (Ky.2005). To justify an instruction on second-degree manslaughter, which applies to wanton killings, KRS 507.040, the Commonwealth was required to prove that Quisenberry acted wantonly, i.e., that the robbery posed a substantial risk to Harper's life and that Quisenberry consciously disregarded that risk when he participated in the robbery.
>
> Repeating his argument that the evidence failed to establish his participation in the robbery, Quisenberry maintains that he likewise could not be deemed complicit in Harper's killing. As discussed above, however, there was sufficient evidence that Quisenberry joined in the robbery. His ability to describe the murder weapon to the detectives, moreover, permits an inference that he knew Williams was armed, and we have held that knowing participation in an armed robbery, where there is obviously a substantial risk that someone will be killed, may be deemed wanton, at least. *Kruse v. Commonwealth*, 704 S.W.2d 192 (Ky.1985). The trial court did not err, therefore, by instructing the jury on second-degree manslaughter.

*Id.*

To warrant federal habeas relief as a result of an incorrect jury instruction, a petitioner must show more than that the instruction was "undesirable, erroneous, or even universally condemned, but that it violated [some constitutional right]." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)) (internal quotation marks omitted). The proper standard is whether there is a "*reasonable likelihood* that the jury has

---

[1] Nonetheless, the Court also finds that Magistrate Judge properly determined that there was sufficient evidence to support this conviction.

applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence." *Boyde v. California,* 494 U.S. 370, 380 (1990) (emphasis added).

Here, the Court finds that the Kentucky Supreme Court did not violate "clearly established Federal law" because there is not a "*reasonable likelihood* that the jury has applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence." *Id.* Quisenberry has not shown that the jury was prevented from considering "constitutionally relevant evidence." In his Petition, he repeatedly disclaims any involvement in these crimes, arguing that he was convicted based on "mere presence" at the scene. But nothing about the second-degree manslaughter instruction prevented the jury from considering the crucial evidence that he thinks was missing from the Commonwealth's proof (*i.e.*, no motive, no intent, no proof he possessed murder weapon, no testimony that his DNA was found in the room where the murder took place). By convicting him of multiple charges, the jury found that his involvement in these crimes was much more extensive than "mere presence." The Court overrules this objection.

## C.     Objection: Double Jeopardy Violation

Quisenberry claims that "[a] double jeopardy violation arose from petitioner being charge [sic] with assault and attempted murder of one violation and then being convicted of facilitation for each charge that arose from a single act." [DE 1 at 15].

Rejecting this claim, the Magistrate Judge found:

> Quisenberry's habeas claim fails to demonstrate the Kentucky Supreme Court unreasonably applied Supreme Court precedent on double jeopardy. The Court agrees with the Kentucky Supreme Court that Quisenberry was not punished twice for the same criminal act because Erica was shot twice, once in the thigh and once in the head. It follows that two criminal acts occurred – an assault by gunshot to Erica's thigh, and an attempted murder by gunshot to Erica's head. The assault charge and attempted murder charge cannot be considered 'lesser included offenses' since the charged conduct of each resulted in a distinct injury

13

> to Erica. Because these were two 'result' offenses, and Erica's resulting injuries came from two separate gunshots, the Kentucky Supreme Court's holding did not result in a decision contrary to, or involving an unreasonable application of, the rule from *Blockburger*.

[DE 18 at 259].

Quisenberry objects:

> As it pertains to the charges levied against the petitioner for Erica Hughes, the minor child, these charges of attempt murder and assault are in violation of the ***Double Jeopardy Clause of the Fifth Amendment to U.S. Const. and §13 of the Ky. Constitution***. The magistrate made a ruling in this matter that is contrary to clearly established law in **U.S. v. Dixon, 509 U.S. 688 (1993)**.

[DE 23 at 290] (emphasis in original).

*Dixon* is a lengthy opinion, and Quisenberry has not argued how the Magistrate Judge's finding conflicts with it. Because Quisenberry has not "pinpointed" the Magistrate Judge's error, the Court does not know what the error is. *Mira*, 806 F.2d at 637 ("The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider"). And it is improper for the Court to comb through *Dixon* for support for Quisenberry's vague and conclusory argument. *See Abela v. Heyns*, No. 1:15-CV-12633, 2017 WL 783471, at *1 (E.D. Mich. Mar. 1, 2017) ("[A] federal court is not required to construct legal arguments for a pro se petitioner"). Finding no error in the Magistrate Judge's analysis and unable to decipher Quisenberry's cryptic objection, the Court overrules it.

**D.     Objection: Juror Misconduct**

Quisenberry asserts that he "received ineffective assistance of counsel resulting from his attorney's failure to make appropriate motions after a juror's basis was revealed." [DE 1 at 16].

The Magistrate Judge thought otherwise:

> Even if Quisenberry could prove his counsel was deficient in not raising the juror's bias at an earlier time, his claim fails at the prejudice prong. Juror # 29632 was dismissed as an alternate juror before deliberations began and, therefore, was

14

> not among the twelve jurors who found Quisenberry guilty or recommended his forty-five-year prison sentence. Accordingly, there is not a reasonable probability that had Quisenberry's counsel challenged the allegedly biased juror earlier that the result of the proceeding would be different. There is no evidence that this juror had any bearing on the jury's guilty verdict.

[DE 18 at 266].

Quisenberry objects:

> Under ***Fields v. Brown, 503 F.3d 755 (CA9.2007)*** biased [sic] can be presumed in exceptional circumstances where, for example, a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury. Therefore a reasonable jurist would agree that the magistrate made a decision contrary to clearly established law when reviewing this claim and further analyze this claim under ***Strickland***. See ***McDonough, 464 U.S. @554 quoting Smith v. Phillips, 455 U.S. 209,217 (1982)***. The magistrate make a decision that is contrary to clearly established law in ***McDonough***.

[DE 23 at 294-295] (emphasis in original).

In *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555-556 (1984), the Supreme Court held:

> To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give . . . [T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

Here, the biased juror was not identified until after voir dire and "was dismissed as an alternate juror before deliberations began and, therefore, was not among the twelve jurors who found Quisenberry guilty or recommended his forty-five-year prison sentence." [DE 18 at 266]. Quisenberry's case is factually distinguishable from *McDonough* because the *McDonough* juror did not disclose his potential bias until after the verdict. As a result, the Magistrate Judge's decision denying this claim is not contrary to it.

15

Quisenberry also argues that "it can be presumed that juror had unauthorized conversations with the other jurors while being in each other's presence throughout the duration of trial. Once the trial court learned of the juror's knowledge of the case and a witness, it was incumbent upon the Petitioner's counsel to lodge a peremptory strike." [DE 23 at 295-296].

State court judges routinely admonish the jury not to discuss the case until deliberations. Quisenberry has offered no proof that the biased juror tainted the jury. Nor has he presented proof that the state court judge failed to admonish the jury. Quisenberry's assumptions are insufficient to merit habeas relief. And as a practical matter, Petitioner's counsel could not "lodge a peremptory strike" because the juror's bias was not discovered until after voir dire. Because the biased juror was struck before deliberations, the Magistrate Judge correctly determined that Quisenberry failed to show that he was prejudiced by his attorney's allegedly deficient performance. The Court overrules this objection.

**E.     Objection: Failure to Investigate**

Quisenberry claims that his counsel was ineffective because he did not "personally interview two witnesses." [DE 1 at 7].

The Magistrate Judge disagreed:

> *Strickland* explains that trial counsel need only conduct a reasonable investigation and counsel's investigative decisions are given 'a heavy measure of deference.' 466 U.S. at 690-91. As noted by the Kentucky Court of Appeals, Turner and Liggons testified at trial, which gave Quisenberry's counsel the opportunity to cross-examine and challenge any unfavorable testimony. Critically, Quisenberry has not demonstrated that the result of his proceeding would have been different had his trial counsel 'personally interviewed' Turner and Liggons or had trial counsel further consulted with Quisenberry.

[DE 18 at 261].

Quisenberry objects:

> It is unquestioned that trial counsel had a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' **_Whitmore v. Lockhart_, 8 F.3d 614, 618-19 (8th Cir.1993) _(quoting Strickland,_ 466 U.S. at 691)**. The magistrate's R & 0 [sic] in this case made a decision that is contrary to clearly established state and federal law as it pertains to counsel's ineffectiveness in failing to investigate and present a viable and 'best defense.'

[DE 23 at 298] (emphasis in original).

Quisenberry has not specified how the Magistrate Judge made a decision that is "contrary to clearly established state and federal law." The Court infers that Quisenberry believes that the Magistrate Judge erroneously applied *Strickland*, but Quisenberry does not "pinpoint" how she erred in her R&R. This is a tantamount to a general objection and the Court declines to consider it. That said, the Court has reviewed the R&R and finds that the Magistrate Judge did not err in her application of *Strickland*. The Court overrules this objection.

**F.    Objection: IAC: Failure to Request Separate Trials**

Quisenberry claims that he received ineffective assistance "arising from the trial courts [sic] failure to order separate trials for himself and his co-defendants." [DE 1 at 9].

The Magistrate Judge found the claim procedurally defaulted:

> The Warden is correct; by failing to raise this issue on his direct appeal, Quisenberry procedurally defaulted his claim. Procedural default bars federal habeas review of this claim unless Quisenberry 'demonstrates cause for the default and prejudice resulting there from, or that failing to review the claim would result in a fundamental miscarriage of justice.' *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Quisenberry does not acknowledge his procedural default in either his § 2254 petition or his reply brief and, relatedly, does not discuss 'cause' or 'prejudice' to excuse his default.

[DE 18 at 262].

Quisenberry objects that "the magistrate's R & 0 [sic] when deciding this case contrary to clearly established federal constitutional law. See **_6th and 14th Am.; and Kotteakos v. U.S.,_ 328**

17

*U.S. 750, 774 (1946)*. After making a determination based on ***Kotteakos,*** this Court needs to apply the Strickland standard to the facts of this case." [DE 23 at 298] (emphasis in original).

The Court agrees with the Magistrate Judge that this claim is procedurally defaulted. Quisenberry has failed to "demonstrate[] cause for the default and prejudice resulting there from, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Because the Court has found that Quisenberry procedurally defaulted this claim, the Court will not consider it on the merits. The Court overrules this objection.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. The Court's **ADOPTS** the Magistrate Judge's Findings of Fact and Conclusions of Law [DE 18].

2. The Court **ADOPTS** the Magistrate Judge's Recommendations [DE 18] that Quisenberry's Petition be denied.

3. The Court **OVERRULES** Quisenberry's objections [DE 23] to the Magistrate Judge's Recommendations.

4. The Court **DISMISSES WITH PREJUDICE** Quisenberry's Petition [DE 1].

5. The Court will not issue a certificate of appealability.

6. The Court will enter a separate Judgment.

Copies to:    Counsel of record